We'll move to our third case this morning, United States v. Johnson. Good morning. Pleased to court. My name is Michael Nash. I represent Antonio Johnson. We raised two issues in our brief. The first is the failure of the district court to give the mere presence or presence instruction. In the district court, it was the government's position and the district court's position that knowingly was an adequate substitute. It's not. If it were, there'd be no need ever for a mere presence instruction. And the danger of concluding that it is, is that if you instruct the jury knowingly, they can conclude knowingly from presence. Mr. Nash, this struck me as an odd case to be asking for the mere presence instruction because he lived at that apartment. Pardon me? Your client lived at that apartment at least a substantial amount of time, and so it struck me as an odd case for the mere presence or bystander instruction. Well, he stayed there sometimes. I think the testimony is three or four days a week. He had closed there, but that only connects him to the apartment. We cited two cases where even repeated presence at the apartment or at the location of the contraband, still the instruction should be given. Right. My point is that he's not a visitor. He's living there with his girlfriend at least, you know, close to half the time. But even if he's living there, we're just talking about presence. They walk in. There are two people there. Whose drugs are they? Actually, we're not talking about mere presence if he actually lives there. That's a contradiction. He's not the lessee. The government says there's no evidence of that, but she's the lessee. Right, but there's evidence that he's residing there. He stays there. There's no question about that. Right. He keeps closed there. And the mere presence instruction is limited and should be used in... Sparingly. Yes, sparingly, I think the instruction commentary says. And only when the evidence supports it, apart from whether, you know, the question which is mostly the focus of the briefing about whether it simply duplicates the knowingly part of the primary instruction on the charge. It just, as I said, struck me as a case where it's completely inapt to give the mere presence instruction when there's substantial evidence that the defendant was actually living at this location. It's not that he just happened to be there or was an occasional visitor. I would say that we do have a disagreement, Judge. That's fair. But the evidence is certainly equivocal. He's there sometimes. The government says that the verdict, the jury's verdict suggests that they did exactly what they were supposed to do. But remember, the drugs are all over the apartment. They're in plain view. So they find him guilty. He's there. Why not? Imagine the impact if you give the mere presence instruction. And let the jury sort it out. The government says, well, the defense counsel was able to argue it. But argument is not instructing the jury as to the law. Instructing them that mere presence is not sufficient wouldn't change the situation with your honor's view, Judge Wood. They could still determine that he lives there. They're his. But they get the benefit of knowing that mere presence is not enough. I'm the other Diane. I'm sorry. That's okay. Judge Sykes, I am sorry. I've been here often enough not to make that mistake. We look alike. Maybe you want to move to your second issue. I'm really kind of troubled by this repetition by the police officer of referring to your client as the target of the search warrant. There was a specific, you know, this issue was litigated in Limoney, and she was told not to use that language or characterize the defendant in that way. And then it keeps popping out of her mouth. And she did it a second time after the district judge in her presence had instructed the jury to disregard. This is an experienced police officer, knows exactly what she's doing, and she has a purpose in doing it. Counsel, does the record indicate whether or not the prosecutor took the witness to the side and talked about this? Or, I mean, there's about 15 pages of transcript. Are we talking about 15 minutes between the first use of the word target, the second use of the word target, or do we know that time frame? Minutes are hard to gauge, but I would say it would be about 15 minutes after the first time. They have a sidebar. The sidebar is about four or five pages of transcript. That's about maybe five minutes. We move from direct to cross, but do we know if there's a break there? Do we know if the prosecutor takes the witness out in the hallway? No, I don't believe it takes them out the hallway, but the prosecutor says, we went over it pre-trial, and that's not the way she answered in trial preparation. Specifically, the prosecutor says that. And remember the second time when it happens, defense counsel doesn't ask where Mr. Johnson is. He says, and where was Mrs. Wilson? And she gratuitously gives him the answer, target. And this plays exactly into mere presence because the police officer is telling the jury, and this is the conclusion of the district court judge, they, the police, have other nefarious information that implicates him. That's what the district court says. And then, strangely, he says to defense counsel, you have to make your questions tighter. Tighter? Tighter than where was Mrs. Wilson? How can you be tighter than that? Exactly. And she gives the answer, the target. If your honors have no questions, I'll take a little time for rebuttal. I'm sure there will be need for some. That's fine. Thank you. Ms. Wright. Good morning, your honors. May it please the court, my name is Misty Wright, and I represent the United States. I want to start with Officer McLean's use of the word target during her testimony at trial. There was no prejudice to the defendant by way of that testimony. Suppose the question had been, as defense suggested, does the Chicago Police Department have additional evidence that incriminates Mr. Johnson? And her answer was yes. Your honor, I believe that would be an entirely different situation. How? In that that would give jury a reason to believe that there is additional incriminating evidence, direct reason to believe. Here the district court found that. Suppose the jury has some idea that before you can get a warrant, you have to have some evidence that suggests that there's a reason to conduct that search. And, your honor, I believe that is the concern articulated by the district court. But the district court determined that despite that concern being there, in the context, that testimony did not unfairly prejudice the defendant here. This was the offhand, in the words of the district court. Offhand? Offhand use of a term in. How do you get that? The district court observed that when asked who was present in the apartment, Officer McLean's response used the term target and female. This is police speak. This is terminology commonly used by law enforcement. In court? This is not. Pardon me, your honor. In testifying in court? I can't speak to what other officers. This is extraordinary. Twice looks less than offhand. Especially after the immediate response, the instruction to disregard. I understand why a district judge might not want to declare a mistrial after the first time. How long did this trial go on? This trial was approximately three days long, Judge. When was the case tried? The case was tried in January, February, pardon me, of last year. Any information on my previous questions to opposing counsel with regard to the time frame between the statements? Yes, your honor. I did want to address your question. After the first instance, there was no break. And the witness was not afforded the opportunity to understand why the objection was sustained. Wasn't it the prosecutor's responsibility, though, to walk back to the witness and say, we've just had a sidebar, the instructions being made not to use that word, don't use it again? The prosecutor was not afforded the opportunity to do so here. However, the district court did allow a break in trial after the witness's testimony for the prosecutor to admonish the remaining law enforcement witnesses not to use the term target to refer to the defendant, which the prosecutor did do at that time. So after the cross, after the second time. Yes, your honor. And the district court here found that in the context, the use of the word defendant to describe Mr. Johnson, or the use of the word target, was similar in context to the use of the word defendant to describe Mr. Johnson. Never was any information about the probable cause supporting... Defendant is a post-charging term. Target suggests that this person is the focus of the law enforcement investigation, and that seems to me to be a commonly understood police nomenclature. You refer to this as just simply police nomenclature, and that's the whole problem, is that people understand that if someone is the target of an investigation, there's evidence on them. And that was specifically excluded here in Limine. There's an order to that effect. Well, I'd like to speak to the order in Limine. That was not specifically excluded here. The order in Limine excluded any testimony regarding the basis for the search warrant. Specifically, it precluded the government from offering evidence about a confidential informant's information that the defendant had previously dealt drugs from that apartment, and also the use of the term Chuck to refer to the defendant. How is that different from his status as the target? That does not disclose, your honor, anything regarding the probable cause, what constituted probable cause for the issuance of the warrant. The jury already knew that there was a... It suggests the existence of probable cause. Yes, and the jury already properly knew that a warrant had been issued. For the apartment? Yes, your honor. The apartment where the defendant regularly stayed. Not that he was the target of the warrant. That's right, your honor. So in the context... Those are two different things. Yes, your honor. In the context, respectfully, I don't think it is a fair assumption that an average juror would understand the word target in the way the parties or people familiar with the justice system would understand it. What do you think it means? What do you think it means to the average juror? As the court observed, it could respectfully be a synonym for the term defendant. Because what they're talking about is the person who is being prosecuted, the person who is the object of the prosecution and standing trial. And the word target is very similar to the word defendant in that way. But nevertheless, the court did recognize the risk of unfairness. And to mitigate that, the court did several different things. It instructed the jury to disregard, and we presume that the jury follows the instructions of the court. It sustained the objections on the record. It permitted the parties to break in trial to ensure no repetition of the use of that term. And it instructed the jury again at the close of the case to disregard anything the court had previously said to disregard. So in so doing, the court cured any risk of prejudice from that testimony, and the court was positioned in a way to be able to assess the effect of that testimony. The court was able to hear all of the evidence, was able to observe the witness, was able to hear how the evidence was coming in and determined that there was no unfair consequence to Mr. Johnson by the witness's use of the term target. Counsel, do you think there was enough discussion at these sidebars between the district judge and the defense attorney, seeking what that defense attorney's remedy should be? I do, Your Honor. The transcript reflects a lengthy discussion about how the court should address an instruction to the jury. The court offered to provide additional instruction to the jury that any testimony about the target of a warrant was irrelevant to the issues to be considered by the jury at trial. Defense counsel did not want the court to further instruct the jury, so the court did exactly what defense counsel requested. Except declare a mistrial. That's right, Your Honor. Except declare a mistrial. I would like to move on to mere presence, unless Your Honors have any further questions. Go ahead. The district court did not err when it declined to give a mere presence instruction at trial. It properly instructed the jury on the elements of the offense, including knowing possession. The mere presence theory of defense was incorporated in the instructions given. Someone cannot both be merely present and knowingly possess narcotics. The elements instruction was the affirmative way to present what constitutes knowing possession. What the defense asked for was the flip side of that coin. And the district court had the discretion to determine that this type of instruction was not necessary because it was duplicative and also because it was not a great match for the facts. As Judge Sykes pointed out, this is an odd case for that instruction. This is a case about constructive possession based on a totality of the evidence. Evidence that included the fact that the defendant resided at that apartment. The defendant admitted the drugs were his. The defendant's personal property, his certificate of title for his car, was found on the same piece of furniture as heroin on a plate. This was all evident, including the girlfriend's testimony that the drugs were not hers and that the defendant kept his belongings there. The defendant also admitted to living at that apartment and said that only he and his girlfriend were the people with keys to that apartment. That was the evidence connecting the defendant to the drugs. The fact of his presence at the time of the search was merely one additional piece of evidence for the jury to consider. And then we have the split verdict in the case, which suggests the gun count there was an acquittal on. That suggests that the jury took the knowingly instruction seriously. Yes, Your Honor. He was convicted of knowing possession of drugs but acquitted of the knowing possession of the guns. And the guns and the drugs were found in the same apartment where the defendant was present. So the point was not lost on the jury, the legal significance of the knowingly requirement. Exactly, Your Honor. If there are no further questions by the panel, for all of these reasons and the reasons articulated in the government's brief, the government asks this court to affirm the defendant's conviction. Thank you. Mr. Nash, Roberto. Thank you, Judge. In answer to your question, Judge Hamilton, the mistrial was requested on the morning of the second day. The transcript begins on the second day, I believe at page 135, and the first mistake occurred at 158 of the transcript, so I would say probably about 10, 1030 in the morning of the second day. As to whether it was a violation of the motion in limine, it very definitely was. The judge's ruling was limiting the government's ability to introduce evidence related to the basis for the search warrant. There was no disagreement in the district court that the police officer's statement did exactly that. There was no doubt in the prosecutor's mind that it violated the order, and the prosecutor had specifically said that he had discussed the order with police officers prior to their testimony, and that was not the way she answered the first time around. If Your Honors have no questions, I would only have one further thing to say to you, Judge Six. If I were to use the phrase other Diane, I would say the Wisconsin Diane and the Illinois Diane, not the other Diane. Thank you. Thank you. Thanks to both counsel. The case is taken under advisement.